## In re DOVETAILED ENTERPRISES, INC., Debtor.

## John G. LEAKE, Trustee, Plaintiff,

### v.

## FIRST AMERICAN BANK OF VIRGINIA, Defendant.

### Bankruptcy No. 5–90–00068. Adv. No. 5–91–00032.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

Dec. 30, 1991.

Roy V. Wolfe, III, Harrisonburg, Va., for trustee.

Brian F. Kenney, Fairfax, Va., for First American Bank of Virginia.

### DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The trustee in bankruptcy in the above-captioned case has filed an adversary proceeding under 11 U.S.C. § 547(b) to avoid an alleged transfer by the debtor to First American Bank of Virginia (hereinafter First American). First American has filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012. For purposes of the motion, all facts alleged in the complaint are taken to be true and are construed in a light most favorable to the trustee as the nonmoving party.

### Facts

First American is the holder of two commercial notes executed by the debtor on February 21, 1986. Debtor signed a security agreement granting First American a lien on its property including all equipment, furniture, fixtures, inventory and accounts receivable. Two of the debtors principals, Allen S. Hazard and James B. Cobert, III, and their respective wives, guaranteed the obligations of the debtor to the bank.

First American recorded a U.C.C. financing statement with the Clerk's Office of the Circuit Court of the City of Winchester on February 28, 1986, and with the State Corporation Commission on March 17, 1986. Despite the filing of these U.C.C.s proper perfection was lacking because the debtor's business premises was located in Frederick County and not in the City of Winchester. When this information became known to First American, it obtained from the debtor a second U.C.C. financing statement which was signed by the debtor and recorded in the proper location. The date of recordation of the second U.C.C. financing statement was October 26, 1989. On January 29, 1990, ninety-four (94) days after the recordation of the second U.C.C. financing

statement in Frederick County, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

Debtor's Chapter 11 case was converted to a Chapter 7 case on January 28, 1991, and John G. Leake was appointed trustee. Pursuant to an order of this court dated May 6, 1991, the debtor's property was sold to Fertig Cabinet Company, Inc. for $175,-000.00 and all asserted liens in the property were transferred to and impressed upon proceeds of sale in order of their priority. Thereafter, the trustee filed the above-captioned complaint pursuant to 11 U.S.C. § 547(b) to avoid the transfer evidenced by the recordation of the second U.C.C. financing statement on October 26, 1989.

First American Bank has resisted the effort to avoid the transfer under 11 U.S.C. § 547(b) on the ground that it was outside of the ninety-day period of time set forth in 11 U.S.C. § 547(b)(4)(A) required in order for the trustee to prevail on transfers to non-insider creditors of the debtor. The trustee has taken the position that the transfer by the debtor to the bank via execution of a second U.C.C. financing statement within ninety-four (94) days of the filing of the petition for relief is a transfer to or for the benefit of the insiders who guaranteed the payment of the obligation to First American and that as a result of the guarantee by the insiders, the preference period of one (1) year under section 547(b)(4)(B) is applicable. Thus, the issue is squarely before the court as to whether the decision in *Levit v. Ingersoll Rand Financial Corporation (In re Deprizio )*, 874 F.2d 1186 (7th Cir.1989), is to be followed.

### Law

The holding of the Seventh Circuit Court of Appeals in *Deprizio* is that a trustee in bankruptcy may recover from a non-insider creditor a transfer made more than ninety (90) days before the date of the filing of the debtor's petition for relief under Bankruptcy Code § 547(b) when such a transfer is of benefit to an insider creditor. There is no decision by the Fourth Circuit Court of Appeals as to the applicability of the *Deprizio* rule in the Fourth Circuit. On the bankruptcy court level, *Deprizio* has been criticized in *In re Arundel Housing Components, Inc.,* 126 B.R. 216 (Bankr. D.Md.1991). In *Arundel,* the creditors' committee in a Chapter 11 proceeding was seeking to recover payments in excess of $200,000.00 which the debtor had paid to Georgia–Pacific Corporation during the year preceding bankruptcy. The *Arundel* decision states that *Deprizio* "represents an incorrect interpretation of the law whose application would subvert justice, produce much needless mischief and create an unfortunate result in the instant case." *Arundel* at 219. The court in *Arundel* did note that there were no allegations of any wrongdoing to justify the punitive relief which the creditors' committee was seeking to extract from Georgia–Pacific. The court believed that the only reason Georgia–Pacific was subject to the attack was because it obtained a guarantee of an insider of the debtor. The inference which can be made from the *Arundel* decision is that the bankruptcy court did not feel that it would be equitable to apply the *Deprizio* doctrine in a case where the only reason for the application of the doctrine is the existence of a guarantee of an insider.

The court believes that the facts as alleged by the trustee in the case at bar distinguish it from the *Arundel* decision. In this case, there was an immediate transfer which perfected First American's security interest in property of the debtor to the detriment of unsecured creditors of the estate. Since this transfer occurred ninety-four (94) days prior to the filing of the petition for relief, inapplicability of the *Deprizio* doctrine to this case would result in a large windfall to First American but for four days. The court notes that the debtor was required to sign the second U.C.C. financing statement before it was filed in Frederick County. For purposes of the 12(b)(6) motion, the court assumes that both of the principals who guaranteed the loan to First American Bank were aware of the execution of the second U.C.C. and were aware of the implications of the execution and recordation of the second U.C.C. Both First American and the guarantors

**654**

had a common interest in the execution and recordation of the second U.C.C. financing statement and in keeping the debtor away from the jurisdiction of the bankruptcy court for more than ninety (90) days after the recordation. By assuring that the transaction would be outside of the ninety-day preferential transfer period, First American saw an opportunity to escape the repercussions of its original filing error and the guarantors saw an opportunity to relieve themselves from liability on their guaranty obligations to the extent that assets of the debtor would be subject to a properly perfected security interest of the bank and the proceeds from sale thereof would be applied toward indebtedness guaranteed. Thus, because of the proximity of the transaction, an inference can be made which negates both the policy implications and equitable considerations utilized in the *Arundel* decision to deny application of the *Deprizio* doctrine.

First American has also referred to *In re Harbour*, 845 F.2d 1254 (4th Cir.1988), for the proposition that the Fourth Circuit has determined that the language of "initial transferee" in Bankruptcy Code § 550(a)(1) should not be interpreted to mean, in all instances, the initial recipient of the preferential transfer. The implication of the *Harbour* opinion is that if an initial recipient is merely an innocent conduit of the transfer, then it might be inequitable to permit the trustee to recover from such a person.

In the case at bar and at this stage of the proceeding, First American Bank does not appear to be a mere innocent conduit of a transfer. In fact, the transfer was made directly to it in the form of a recordation of a second U.C.C. financing statement which gave it a properly perfected security interest in the debtor's property ninety-four (94) days prior to the filing of the petition for relief. Absent the filing of that U.C.C. financing statement, First American's asserted lien in the debtor's property would have been subordinate to the rights of the trustee in bankruptcy. Thus, First American Bank was a direct beneficiary of the transfer and this court does not find any basis for application of the equitable con-

siderations referred to in the *Harbour* opinion.

Based upon the foregoing and a careful analysis of the Seventh Circuit Court of Appeals decision in *Deprizio*, the court is satisfied that the *Deprizio* rule should be applied in the case at bar. Accordingly, it is

ORDERED:

That the motion to dismiss of First American Bank of Virginia be, and it hereby is DENIED.