In re **BROAD STREET ASSOCIATES,**
Debtor.

**BROAD STREET ASSOCIATES,**
Plaintiff,

v.

**UNITED COMPANIES LIFE INSURANCE COMPANY,**
Defendant.

**Bankruptcy No. 93–10182–AT.
Adv. No. 93–1130.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 10, 1993.

Joel L. Dahnke and Cynthia A. Foulk, Mays & Valentine, Alexandria, VA, for defendant.

Stephen S. Mitchell, McKinley, Schmidtlein & Mitchell, Alexandria, VA, for debtor/plaintiff.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Debtor plaintiff Broad Street Associates has brought this adversary proceeding pursuant to 11 U.S.C. §§ 547(b) and 550(a)(1). Debtor seeks to avoid as an insider preference under § 547 the fixing of liens obtained by defendant creditor United Companies Life Insurance Company ("United") against debtor's real and personal property. Under § 550(a)(1), debtor further seeks to recover any payment received by United in satisfaction of its liens.

United has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and Fed. R.Bankr.P. 7012 for failure of debtor to state a claim upon which relief may be granted. United maintains that as a matter of law its liens do not constitute avoidable transfers for purposes of § 547(b) and therefore are not recoverable under § 550(a)(1).

Hearing was held on United's dismissal motion on July 7, 1993, and the court took the matter under advisement. The court concludes that United's liens are not avoidable under §§ 547(b) and 550(a)(1). For the reasons given in this memorandum opinion United's motion to dismiss is granted.

### Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, the court must accept all allegations of the complaint as true, construe it in a light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff might be entitled to relief. *Performance Communications, Inc. v. First Nat'l Bank (In re Performance Communications, Inc.)*, 126 B.R. 473, 474 (Bankr. W.D.Pa.1991) (citing *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981)). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### Facts

The principal facts alleged by the complaint, and which must be accepted as true under the motion to dismiss, are as follows. On July 18, 1989, debtor, a Virginia general partnership, borrowed $2,060,000.00 from United, secured by a deed of trust against certain real property belonging to debtor. The note was personally guaranteed to the extent of 58 percent of the indebtedness by each of debtor's three general partners.

In 1991, debtor defaulted on the note, and on November 20, 1991, the property securing the note was sold at a foreclosure sale. The sale resulted in a claimed deficiency exceeding $710,000.00 owed to United.

On January 30, 1992, debtor's three partners each filed voluntary chapter 11 petitions in this district.

On February 12, 1992, United brought suit against debtor and its general partners. A default judgment was subsequently entered against debtor and its three partners on March 25, 1992, in the amount of $756,096.24; however, the judgment was void with respect to the partners because it violated the automatic stay as to them.[1] Thereafter, United docketed or recorded its judgment against debtor in multiple jurisdictions within Virginia and West Virginia and as a result holds a judgment lien on debtor's real property.

Some three years earlier, on July 12, 1989, debtor had been involved in a sale of a warehouse it owned in Fairfax County, Virginia, in exchange for a $429,000.00 note (the "Golt note") secured by a deed of trust against the property. The note was to be paid in monthly installments of $4,390.00 (interest only), with the principal due on July 12, 1994.

On November 17, 1989, debtor borrowed $330,000.00 from Community Bank and Trust Company of Virginia ("Community Bank") and pledged the Golt note as collateral. The

---

1. United concedes that its judgment against the individual partners is void. This, of course, does not affect the judgment against the partnership itself.

installment payments on the Community Bank note, $4,390.00, matched the monthly payments on the Golt note. The deed of trust securing the Golt note was assigned to Community Bank, which collected the payments made on the Golt note and applied them to its own note. On February 11, 1993, the Golt note was paid off in full in the amount of $443,975.22. Community Bank applied $280,597.43 of that sum to its own note, leaving the bank holding an excess cash balance of $158,987.79.

Seeking to attach these cash proceeds held by Community Bank, United obtained a writ of fieri facias in Loudoun County, Virginia, on June 3, 1992, and delivered it to the county sheriff the following day. On June 8, 1992, a deputy sheriff of Loudoun County served a copy of United's writ on an officer of Community Bank.

Debtor filed a voluntary chapter 11 petition on January 15, 1993. Community Bank continues to retain the balance of the proceeds of the Golt note in an escrow account, awaiting the direction of this court.

### Position of the Parties

#### DEBTOR.

Debtor contends in its complaint that United's execution lien against debtor's personal property, including the proceeds of the Golt note, and the judgment lien against debtor's real estate, constitute preferential transfers as defined by § 547(b) of the Bankruptcy Code. Debtor argues that the elements of § 547(b) are met because the liens were obtained within one year of its bankruptcy petition; operated to the benefit of one or more insiders, namely debtor's general partners because they had personally guaranteed United's note; were obtained on account of an antecedent debt; were obtained while debtor was insolvent; and will, if not avoided, enable *United* to receive more than it otherwise would if debtor's bankruptcy case were a case under chapter 7. To the extent that United has or will receive any payment resulting from its liens, debtor asserts that the payments may be recovered from defendant under § 550(a)(1).

#### UNITED.

Pursuant to its writ of fieri facias, United claims a lien upon all personal property of debtor, including the remaining proceeds of the Golt note. Additionally, as a result of the recording or docketing of its judgment in the jurisdictions where debtor owns real estate, United claims a lien against all of debtor's real estate.

United maintains that debtor has no recourse to §§ 547 and 550. It argues that the so-called "Deprizio" rule, upon which debtor must base its entire case, does not apply to general partnerships because the supposed inside creditors—here debtor's general partners—are personally liable for all of the partnership's debts, regardless of any personal guarantees they may have given. As a consequence, the general partners received no "benefit" by the fixing of United's liens against partnership assets, nor would the *partners* have received more in a chapter 7 distribution as a result of the liens.

### Discussion and Conclusions of Law

In order to attain greater equality of treatment among creditors of an insolvent debtor and to prevent the debtor from being dismembered by its creditors in a race to the courthouse, Congress has authorized bankruptcy trustees to avoid and recover preferential transfers. Section 547(b) of the Bankruptcy Code provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Section 550(a) provides as follows:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

Section 547(b)(1), which speaks of transfers to *or for the benefit* of a creditor, leaves open the possibility that a transfer may be avoided even if it is not preferential as to the direct recipient. Under this section, a trustee may invalidate pre-bankruptcy transfers of the debtor's property if the transfers indirectly prefer creditors.

The landmark case *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186 (7th Cir.1989), involved pay-ments made by a debtor corporation to one of its creditors on a loan which had been personally guaranteed by the corporation's president and his brothers. The court in *Deprizio* held that if debts owed to an outside creditor are guaranteed by an insider[2] of the debtor, the creditor can be required to disgorge preferential payments received from the debtor more than ninety days but less than a year before its bankruptcy. *In re V.N. Deprizio Constr. Co.*, 874 F.2d at 1195. The court reasoned that, because the inside guarantors risked liability to the outside creditor if the corporation should default on its loan, they were contingent creditors of the corporation. If they had been required to pay the corporation's debt, they would have been entitled to bring a claim against the corporation for reimbursement. *In re V.N. Deprizio Constr. Co.*, 874 F.2d at 1190. Because every payment made by the corporation to the outside creditor reduced the inside guarantors' exposure by a corresponding amount, the payments were to their benefit as creditors of the corporation. *In re V.N. Deprizio Constr. Co.*, 874 F.2d at 1190. See also *Unsecured Creditors' Comm. of Seasons Properties v. Miller & Martin (In re Seasons Properties)*, 141 B.R. 631, 635 (Bankr. E.D.Tenn.1992).

The holding in *Deprizio* avoiding a transfer that benefitted an inside guarantor is not controversial.[3] However, the court's interpretation of § 550(a)(1) to allow recovery from the outside creditor, even though the creditor would have been shielded from attack had it not been given the guaranty, has engendered considerable debate.[4] Debtor

---

2. Section 547(b)(4)(B) extends the preference period from 90 days to one year before the date of filing if the creditor in question was an "insider" at the time of the transfer. An insider includes such persons as directors or officers of a debtor corporation, their relatives, persons in control of the debtor, and general partners of debtor partnerships. 11 U.S.C. § 101(31).

3. *See* David. I. Katzen, *Deprizio and Bankruptcy Code Section 550: Extended Preference Exposure Via Insider Guarantees, and Other Perils of Initial Transferee Liability*, 45 Bus.Law. 511 (1990) (most, if not all, courts hold benefitted *insider* liable under § 550(a)(1), whereas some courts have applied their equitable powers to shelter outside creditors).

4. Several courts have voiced their opposition to the *Deprizio* line of reasoning. *See Block v. Texas Commerce Bank, N.A. (In re Midwestern Cos.)*, 102 B.R. 169 (W.D.Mo.1989); *Performance Communications, Inc. v. First Nat'l Bank (In re Performance Communications, Inc.)*, 126 B.R. 473 (Bankr.W.D.Pa.1991); *Official Creditors' Comm. v. Georgia–Pacific Corp. (In re Arundel· Hous. Components, Inc.)*, 126 B.R. 216 (Bankr.D.Md. 1991); *In re Aerco Metals, Inc.*, 60 B.R. 77 (Bankr.N.D.Tex.1985); *Goldberger v. Davis Jay Corrugated Box Corp. (In re Mercon Indus., Inc.)*, 37 B.R. 549 (Bankr.E.D.Pa.1984); *Schmitt v. Equibank (In re R.A. Beck Builder, Inc.)*, 34 B.R. 888 (Bankr.W.D.Pa.1983);

Other courts have supported *Deprizio*. *See T.B. Westex Foods, Inc. v. FDIC (In re T.B. Westex*

asks for precisely this relief in the instant case. As in *Deprizio*, debtor's insiders gave personal guarantees as security for funds borrowed from an outside creditor. Relying on the *Deprizio* rationale, debtor wishes to invalidate United's liens and recover any payments received by United as a result of the liens.

As revealed in footnote 4 *supra*, the doctrine which debtor seeks to apply here has not been uniformly adopted by the courts. Although two bankruptcy courts in the Fourth Circuit have taken opposing views on *Deprizio*,[5] our Court of Appeals has not ruled on the issue.

However, under my analysis in this case, this court need not attempt to resolve the *Deprizio* controversy. Even assuming *arguendo* that *Deprizio* is a viable doctrine in the Fourth Circuit, here it provides no relief to debtor because two elements of § 547(b) cannot be met by the facts alleged in the complaint. Because § 547 is inapplicable, the *Deprizio* theory of recovery under § 550(a)(1) does not arise.

*Foods, Inc.)*, 950 F.2d 1187 (5th Cir.1992); *Harrison v. Brent Towing Co. (In re H & S Transp. Co.)*, 939 F.2d 355 (6th Cir.1991); *Ray v. City Bank and Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990); *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Brothers Drilling, Inc.)*, 892 F.2d 850 (10th Cir. 1989); *Jameson Travel, Inc. v. Wainwright Bank & Trust Co. (In re Jameson Travel, Inc.)*, 147 B.R. 822 (Bankr.D.Mass.1992); *Miller v. Steinberg (In re Marilyn Steinberg Enters. Inc.)*, 141 B.R. 587 (Bankr.E.D.Pa.1992); *Banner v. S.S. Pierce Company (In re Pine Springs Farm & Casino, Inc.)*, 139 B.R. 90 (Bankr.N.D.N.Y.1992); *Leake v. First Am. Bank of Va. (In re Dovetailed Enters., Inc.)*, 136 B.R. 652 (Bankr.W.D.Va.1991); *Roost v. United States Nat'l Bank of Or. (In re Ishaq)*, 129 B.R. 206 (Bankr.D.Or.1991); *Official Unsecured Creditors' Comm. v. Zenith Prods., Ltd. (In re AEG Acquisition Corp.)*, 127 B.R. 34 (Bankr.C.D.Cal. 1991); *Covey v. Northwest Community Bank (In re Helen Gallagher Enters., Inc.)*, 126 B.R. 997 (Bankr.C.D.Ill.1991).

*Deprizio* has also been addressed by several commentators. *See* Robert F. Higgens & David E. Peterson, *Is There a One–Year Preference Period for Non–Insiders?*, 64 Am.Bankr.L.J. 383 (1990); A. Bruce Schimberg, *Some Observations About Deprizio*, 63d Annual Meeting of the Nat'l Conf. of Bankr. Judges 2–23 (1989); Walter A. Effros, *Deprizio's Honor: Lenders, Insider Guarantors and the Prisoner's Dilemma*, 21 Seton Hall L.Rev. 774 (1991); David I. Katzen, *Deprizio and Bankruptcy Code Section 550: Extended Prefer-*

*SECTION 547(b)(1).*

■ To be avoided, a transfer must be "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). As *Deprizio* notes, an insider guarantor of a corporation will be benefitted when the debts the insider has guaranteed are paid, because the guarantor's exposure to the lender is thereby reduced. When the guarantors are all general partners of a debtor partnership, however, no reduction of exposure will occur. This is so because general partners are always liable for the debts of the partnership, regardless of any guarantees they may give. *See* Va.Code Ann. § 50–15 (Michie 1989). Therefore, the preferential payment of one of the partnership's debts will not reduce the partners' net exposure on partnership obligations. *In re Seasons Properties*, 141 B.R. at 634. If the assets of a partnership are insufficient to cover its debts, general partners cannot lessen their personal liability by directing preferential payments to some creditors, because the partners' exposure to the remaining creditors will correspondingly increase.[6] *In re Sea-*

*ence Exposure Via Insider Guarantees, And Other Perils of Initial Transferee Liability*, 45 Bus.Law. 511 (1990); Tom Lane, *Recovery of Avoidable Transfers from the "Initial Transferee" Under Section 550(a) of the Bankruptcy Reform Act of 1978*, 96 Comm.L.J. 457 (1991).

5. *See In re Dovetailed Enters., Inc.*, 136 B.R. 652 (Bankr.W.D.Va.1991) (supporting *Deprizio*); *In re Arundel Housing Components, Inc.*, 126 B.R. 216 (Bankr.D.Md.1991) (declining to follow *Deprizio*).

6. The court in *In re Seasons Properties* provides a helpful example. Assume that during the preference period the partnership owed creditors $50,-000.00. If partnership assets totalled only $40,-000.00, the general partners would be jointly and severally liable for the $10,000.00 deficiency. If a $5,000.00 prepetition payment is made to a partnership creditor from partnership assets, the partnership liabilities and assets will both be reduced by $5,000.00. Despite this, the partnership's debts remain $10,000.00 greater than its assets. Consequently, the general partners' exposure has not been reduced by the prepetition payment. *In re Seasons Properties*, 141 B.R. at 634 n. 2.

It must be kept in mind, however, that this analysis describes only those situations where *all* general partners are personally liable for *all* debts of the partnership. If there are some partnership debts for which a general partner is not

*sons Properties*, 141 B.R. at 634. As a result, debtor's general partners could not have benefitted by the fixing of United's judgment liens.[7] Debtor has therefore failed to allege facts which satisfy § 547(b)(1), and on that basis alone, United's liens cannot be avoided as preferences.[8]

## SECTION 547(b)(5).

■ Additionally, however, § 547(b)(5) precludes the treatment of United's liens as preferential transfers. Debtor's complaint alleges that § 547(b)(5) is met because the transfers will enable *United* to receive more than it would have under chapter 7. This allegation, however, presents a faulty application of the statute. The "creditor" referred to in § 547(b)(5) is the same "creditor" referred to in § 547(b)(1). That is, either the creditor to whom the transfer was made or the creditor benefitted by the transfer. Debtor's complaint asserts that the trustee's avoidance powers are triggered here because under 547(b)(1) the judgment liens were "for the benefit of a creditor," debtor's general partners. Once debtor's complaint chooses to focus on the creditor benefitted under § 547(b)(1), rather than the creditor to whom the transfer was made, § 547(b)(5) requires that the transfer in question enable "such creditor" to receive more than would be re-

ceived if the case were under chapter 7. Therefore, § 547(b)(5) in this instance, must refer to debtor's general partners, not United. Debtor wishes to apply both types of "creditor" contemplated by § 547(b)(1), the actual transferee and the creditor indirectly benefitted, to satisfy the elements of § 547. However, in my view § 547 clearly anticipates a choice between the two. *See also In re Helen Gallagher Enters., Inc.*, 126 B.R. at 1001 (reference to "creditor" in § 547(b)(5) is to the guarantor and not to non-insider lender); *In re C–L Cartage Co.*, 899 F.2d at 1493.

Furthermore, the court's reading comports with the focus of the inquiry, which is on the general partners, not the outside lender. It is only because of the involvement of debtor's partners that debtor can even argue that United received a preference. The creation of its liens occurred well outside of the normal 90 day preference period. If United's liens constitute a preference it is only because of the added element of the partners' insider status. Therefore, this court is required to determine whether the general partners, not United, had anything to gain from the prepetition transfers.

Because debtor has confused the "creditor" referred to in § 547(b)(5), debtor has failed to make any allegations that satisfy this element of a preference under § 547.

personally liable (because a partner left before some of the debts were incurred, or because a new partner joined and did not assume all outstanding partnership debts), prepetition transfers *to a creditor of the partnership may in fact benefit that partner.* If for example, a general partner is immune from a $5,000.00 debt to a partnership creditor, the partner would have an incentive to apply $5,000.00 to a debt for which he is liable. The partner's interests are, to the extent of $5,000.00, divorced from his fellow general partners. Their exposure remains unchanged, while the partner's is reduced. *See In re Seasons Properties*, 141 B.R. at 634–35 n. 3 (referencing Katzen, *supra* notes 3 and 4, at 511). There is nothing in the present case, however, which suggests that plaintiff's three general partners are not equally liable for all partnership debts.

7. Only a handful of courts have dealt with the application of *Deprizio* in the partnership context. With the exception of *In re Seasons Properties*, no court has addressed whether the nature

of a general partner's liability excludes general partnerships from the *Deprizio* rationale. *See Clark v. Balcor Real Estate Fin. Inc. (In re Meredith Millard Partners)*, 145 B.R. 682 (D.Colo. 1992) (in holding that general partners were benefitted by payments to lender on personally guaranteed loans, court did not address distinction between corporations and partnerships).

8. It may be the case that the court's discussion of the futility of reducing a general partner's exposure on personally guaranteed loans is unnecessary. It appears from the facts alleged in the complaint that the plaintiff's partners may have been in chapter 11 bankruptcy when the partnership filed its own chapter 11 petition on January 15, 1993. This court is not aware of the disposition of those bankruptcy cases. However, assuming the partners were, in fact, immune from United's claim, they could not be benefitted by United's lien even if the *Deprizio* doctrine applied to general partners in debtor partnerships. If they were not exposed to begin with, their exposure could not, of course, be reduced.

■ However, even if debtor had directed its § 547(b)(5) allegations toward the proper "creditor," debtor would still have failed to allege facts which would satisfy § 547(b)(5). Debtor's general partners cannot receive more under a chapter 7 liquidation as a result of United's liens. When there are insufficient partnership assets to pay partnership creditors in full, the general partners neither derive any benefit from a prepetition transfer, nor are they entitled to any distribution in a chapter 7 liquidation. Section 723(a) of the Bankruptcy Code states:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

11 U.S.C. § 723(a). Therefore, when partnership debts exceed partnership assets, general partners are liable to the chapter 7 trustee for the difference. In such circumstances, distribution to the general partners for any claims they may have against the partnership is not possible.[9]

Debtor's general partners in the present case do not receive more than they would in chapter 7 because the prepetition attachments preclude the partners' recovery of anything from debtor's bankruptcy. There-fore, even had debtor alleged the proper "creditor," § 547(b)(5) cannot be satisfied.

Finally, the court also finds persuasive United's argument that debtor's theory would produce the absurd result that all transfers made by partnerships within the year prior to bankruptcy would be subject to the one year preference period, since a "partnership" debt is effectively guaranteed by all its general partners.

In summary, debtor's allegations cannot satisfy § 547(b)(1) and (5), elements essential to a complaint to avoid preference. Since recovery under § 550(a)(1) is justifiable only to the extent that a transfer is avoided, I conclude that debtor can prove no set of facts which would entitle it to the relief it seeks. Accordingly, United's 12(b)(6) motion to dismiss will be granted.

A separate order will be entered.

---

9. The following examples help illustrate the point of why, in the case of a corporate debtor, the *Deprizio* analysis may satisfy the requirements of § 547(b)(5), while it will not in the case of a general partnership. Assume that an officer of a corporation personally guarantees a corporate loan for $20,000.00. The corporation then defaults on the loan and the inside guarantor is liable for the entire $20,000.00. If the lender collects against the officer, the officer then has a $20,000.00 claim against the corporation. In a chapter 7 liquidation, however, it is unlikely that, as a general unsecured creditor, the officer will be able to collect the entire amount owed him by the corporation.

Assume further that property of the estate is sufficient to pay each unsecured creditor 50 percent of its claim. Therefore, if the corporation completely defaulted on the loan, the inside guarantor would suffer a loss of $10,000.00. If, however, the corporation had made a $5,000.00 *Deprizio* payment to the lender within the preference period, the inside guarantor's contingent liability would be reduced to $15,000.00. The 50 percent loss being suffered by the guarantor in chapter 7 would now only be $7,500.00. As a result, the guarantor will be better off by $2,500.00 because of the prepetition transfer made to the lender.

However, general partners of debtor partnerships do not fare as well. Applying the same set of facts, a general partner will not be enriched by the partnership's $5,000.00 payment to the lender. Assuming a deficiency, which is necessary since the partner's personal liability will never come into play otherwise, a $5,000.00 payment only shifts the partner's liability, it does not reduce it. The general partner is still liable for $20,000.00 to other creditors. This was the analysis given in footnote 6. Moreover, the partner is not entitled to any distribution from the liquidation of the estate because of the deficiency. Consequently, the general partner's position has not improved because of the prepetition $5,000.00 transfer.